# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | CASE NOS.: 2:07po293 & 294 |
| JAMES DEE HAMLIN II, ) | |
| Defendant ) | |

### *I. Background and Facts*

These cases came to be heard before the court on February 20, 2008, at which time the defendant, James Dee Hamlin II, pleaded not guilty to four Violation Notices, each of which charged the defendant with a traffic-related petty offense within the confines of the Cumberland Gap National Historic Park on September 20, 2007. *See* 36 C.F.R. § 1.3(a) (2007)(covering offenses within the jurisdiction of the National Park Service). These Violation Notices charged the defendant with driving under the influence of drugs in violation of 36 C.F.R. § 4.23(a)(1), operating a motor vehicle without the proper insurance or proof of insurance in violation of 36 C.F.R. § 4.2, which incorporates TENN. CODE ANN. § 52-12-139, operating a motor vehicle on a suspended or revoked license in violation of 36 C.F.R. § 4.2, which incorporates TENN. CODE ANN. § 55-50-504, and failing to wear seat belt in violation of 36 C.F.R. § 4.15.[1]

---

[1] At Hamlin's trial, defense counsel informed the court that Hamlin was not contesting the seatbelt and driving suspended charges. Because Hamlin was contesting the other two charges, the court entered not guilty pleas on his behalf on all of the charges.

-1-

The evidence presented at trial showed that National Park Service Law Enforcement Ranger Mike Ausmus pulled over a vehicle being driven by Hamlin after it stopped and turned around in the roadway about 50 yards away from a checkpoint set up on Tiprell Road within the confines of the Cumberland Gap National Historic Park within the Eastern District of Tennessee.[2] Ausmus testified that he did not observe any problems with Hamlin's driving. In particular, he testified that he did not observe Hamlin's vehicle weave or swerve and that Hamlin was not speeding prior to being stopped. Ausmus also stated that Hamlin used his signal light to indicate that he was turning off the road to stop his vehicle.

Ausmus stated that, when he approached the vehicle to question the driver, he observed that Hamlin was not wearing his seatbelt. He stated that Hamlin was unable to provide him with any proof that the vehicle was insured. Ausmus further stated that the driver's license provided to him by Hamlin had expired in 2001. A videotape recording of the traffic stop shows that Hamlin admitted to Ausmus that he turned his vehicle around to avoid the checkpoint because he knew that his driving privileges were suspended.

Ausmus testified that he noticed that Hamlin's speech was slurred , his eyes appeared glassy and his pupils were dilated. He asked Hamlin if he had consumed alcohol or if he had taken any medication and Hamlin stated that he had taken some

---

[2]The Cumberland Gap National Historic Park spans land in the Western District of Virginia, Eastern District of Kentucky and Eastern District of Tennessee. Pursuant to Order entered December 28, 1993, in each of these districts, the undersigned, along with magistrate judges in the other districts, have been granted multi-district authority to proceed in matters arising within the confines of the Park.

prescribed pain medication. Ausmus asked Hamlin to perform three field sobriety tests, the horizontal gaze nystagmus, ("HGN"), test, the one-leg stand and the walk and turn. Ausmus testified that the HGN test was positive, which indicated that the defendant was under the influence of drugs or alcohol. Ausmus admitted, however, that the results of this test could be affected if conducted in the presence of blinking or flashing lights and that Hamlin's test was conducted in the presence of blinking or flashing lights. Ausmus stated that Hamlin also failed to perform the one-leg stand and walk and turn tests. Ausmus stated that Hamlin had told him that he suffered from back problems which affected his ability to perform these tests. The videotape recording shows Hamlin's performance of only a short portion of the walk and turn test. It appears that the other tests were performed while Hamlin was not in front of the video camera.

After Ausmus arrested Hamlin on charges of driving under the influence of drugs, blood and urine samples were collected from Hamlin. David Ryan Johnson, a toxicologist with the Kentucky State Police Laboratory, testified that he conducted the analysis of these samples. Johnson testified that these samples revealed that Hamlin's blood contained levels of hydrocodone, zolpidem (Ambien), and meprobamate and carisoprodol (Soma), within therapeutic ranges. Johnson testified that the analysis of Johnson's urine sample revealed the presence of cannabinoid metabolites. Johnson further testified that each of the drugs found in Hamlin's system were central nervous system depressants. He stated that each of these drugs, when contained in the blood stream at a therapeutic level, could, but would not necessarily, impair a person's ability to drive.

Defense counsel moved to exclude Johnson's testimony regarding what, if any effect, the drugs found in Hamlin's blood stream would have on his ability to drive. Counsel argued that, prior to trial, he had requested information pursuant to Federal Rule of Criminal Procedure 16 and that the government had not provided him with any report from Johnson containing these expert opinions. The government conceded that the only report from Johnson provided to defense counsel was his December 7, 2007, Report of Laboratory Examination, which did not contain any expert opinion regarding what, if any, effect the drugs found in Hamlin's blood stream would have had on his ability to drive. The court took the motion under advisement.

Dr. Efren Valencia, M.D., appeared and testified that he has treated Hamlin since 1989 for a chronic pain problem caused by injuries suffered from a gunshot wound. In fact, Dr. Valencia testified that Hamlin still has a bullet lodged in his body near his spinal cord from this incident. Dr. Valencia testified that in September 2007 he had prescribed Lorcet, Soma and Ambien for Hamlin.

Dr. Valencia stated that he had never prescribed the use of marijuana for Hamlin, and that the use of marijuana would be contraindicated with the medications he did prescribe for Hamlin. Dr. Valencia stated, however, that Hamlin did take over-the-counter medication for gastroesophageal reflux disease, which could result in a false positive for the use of cannibinoids.

Hamlin introduced an Insurance Identification Card showing that a vehicle matching the description of the vehicle that he was driving on September 20 was insured from May 30, 2007, to November 30, 2007, by Permanent General Assurance

Corporation.

At the conclusion of the evidence, the court announced that it found the evidence sufficient to convict the defendant of the driving suspended and seatbelt violations, and it took under advisement the other two charges pending its decision on defense counsel's motion to exclude portions of Johnson's expert testimony.

*II. Analysis*

Rule 16(a)(1)(G) requires the government, upon the defendant's request, to provide the defendant with a written summary of any expert opinion testimony it intends to use during its case-in-chief. FED. R. CRIM. P. 16(a)(1)(G). The government does not contest defense counsel's assertion that a request was made for disclosure of information pursuant to Rule 16. Further, the government concedes that the only report from Johnson provided to the defendant was the Report of Laboratory Examination, which did not contain any expert opinion regarding what, if any, effect the drugs found in Hamlin's blood stream would have had on his ability to drive. Therefore, it would appear that defense counsel's motion to exclude Johnson's expert testimony on this issue is well-founded. Nevertheless, the court will deny the motion to exclude this testimony based on the court's finding that the government's evidence, including this testimony, is insufficient as a matter of law to prove that Hamlin was guilty of driving under the influence of drugs.

To meet its burden of proof, the government must prove beyond a reasonable doubt that Hamlin was driving while under the influence of drugs "to a degree that

render[ed] [him] incapable of safe operation." 36 C.F.R. § 4.23(a)(1) (2007). While the evidence before the court shows that Hamlin had at least three drugs in his system when he was stopped on September 20, Johnson testified that these drugs were present at therapeutic levels. Also, Johnson did not testify that the presence of these drugs at these levels would have affected Hamlin's driving ability. Instead, Johnson, in the portion of his testimony that defense counsel moved to exclude, testified that the presence of these drugs at these levels "could" have affected Hamlin's driving ability.

The government argues that this opinion, in addition to the evidence concerning Hamlin's performance on the field sobriety tests and his driving prior to the traffic stop, is sufficient to show that he was under the influence of drugs to the point that he was incapable of safe operation of a motor vehicle. The court disagrees. The evidence before the court does not demonstrate that Ausmus observed any problems with Hamlin's driving. In particular, Ausmus testified that he did not observe Hamlin's vehicle weave or swerve and that Hamlin was not speeding prior to being stopped. Ausmus also stated that Hamlin used his signal light to indicate that he was turning off the road to stop his vehicle. Furthermore, while Ausmus testified that Hamlin failed the three field sobriety tests administered, the evidence before the court shows that the conditions under which the tests were performed or Hamlin's back condition could be the cause of his performance on these tests. That being the case, the court finds that the government has not met its burden of proof and will find Hamlin not guilty of the driving under the influence charge.

The court also will find Hamlin not guilty of the no insurance charge based on the proof of insurance provided to the court.

## *III. Conclusion*

Based on the above-stated reasons, I will deny the defendant's motion to exclude Johnson's opinion regarding what, if any effect, the drugs found in Hamlin's blood stream would have on his ability to drive, and I will acquit the defendant on the driving under the influence and no insurance charges.

The defendant is ordered to appear as scheduled at 1 p.m. on March 19, 2008, for sentencing on the driving suspended and seatbelt violations.

ENTERED: February 27, 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE